**SOUTHERN SURETY CO. et al. v. WEAVER et al.  (No. 666—4177.)**

(Commission of Appeals of Texas, Section A. June 27, 1925.)

**1. Master and servant ⊕⇒401—Pleading held to state cause of action for compensation.**

Allegations, that deceased employee received his injuries while engaged in the scope of his employment and acting within the scope of his duties, or while engaged in course of employment, *held* to be sufficient statement of cause of action for compensation, under Workmen's Compensation Act (Vernon's Ann. Civ. St. Supp. 1918, arts. 5246—1 to 5246—91), being statements of facts, and not mere conclusions of pleaders.

---

**2. Master and servant ⬀401—Compensation claimants need not allege and prove negligence.**

Those claiming compensation do not have to allege and prove that the deceased was injured through negligence of employer.

**3. Evidence ⬀118—Application of res gestæ discretionary.**

. Rule, as to what is res gestæ, is very latitudinous, and its application must be left largely to judicial discretion of trial court in each particular case.

**4. Appeal and error ⬀970(2) — Finding of trial court, as to res gestæ, not disturbed on appeal.**

Where the trial court in his discretion held that statement of deceased, about an hour after accident, and while in doctor's office suffering intense pain, was res gestæ, while question was one of law, the Commission of Appeals was not warranted in holding action erroneous.

**5. Master and servant ⬀386(5)—Stepmother held not entitled to share in award of compensation.**

Under Vernon's Ann. Civ. St. Supp. 1918, art. 5246—15, awards of compensation, under Workmen's Compensation Act, are governed by the law of descent and distribution, and stepmother is not entitled to share in award, where deceased left father and brothers.

Error to Court of Civil Appeals of Ninth Supreme Judicial District.

Combined actions by the Southern Surety Company against Gilbert Weaver and another, and by Andrew Weaver and wife against the Southern Surety Company and others, to set aside an award of the Industrial Accident Board for the death of E. E. Weaver, employee. Judgment awarding compensation was affirmed by the Court of Civil Appeals (260 S. W. 622), and the Surety Company and others bring error. Affirmed.

C. A. Lord and O. M. Lord, both of Beaumont, for plaintiffs in error Andrew Weaver and wife.

McGregor & Burr, of Houston, for other plaintiffs in error.

E. B. Pickett, Jr., of Liberty, for defendants in error.

CHAPMAN, J. In August, 1922, C. C. Cannon was engaged in drilling for oil in Liberty county, and under the Employer's Liability Act (Vernon's Ann. Civ. St. Supp. 1918, arts. 5246—1 to 5246—91) carried insurance on his employees with the Southern Surety Company. On August 9, 1922, E. E. Weaver, an unmarried man, one of Cannon's employees, while acting in the scope of his employment, received injuries in a boiler explosion, from the effect of which he died in about 10 hours. At the time of the accident, Weaver's mother was not living, and his father had married again. In addition

to his father, Weaver left surviving him two minor brothers, Clyde Weaver and Gilbert Weaver.

Upon a finding by the Industrial Accident Board, that the father of E. E. Weaver was not dependent on him; and that the two minor brothers were dependent, the compensation for the death of E. E. Weaver, under the provisions of the Employer's Liability Act, was awarded to the two minor brothers. The Southern Surety Company, and Andrew Weaver and his wife brought suits to have the award of the Industrial Accident Board set aside. The two suits were combined.

Andrew Weaver and Fanny Weaver, in their petition, alleged that E. E. Weaver, deceased, was in the employ of C. C. Cannon, a drilling contractor in the capacity of boiler fireman, and that while engaged in the scope of his employment, and while acting within the scope of his duties as a boiler fireman, he sustained serious burns, scalds, and injuries which resulted in his death on the same day that the injuries were received. Clyde Weaver and Gilbert Weaver in their answer alleged that the injuries which caused the death of E. E. Weaver were received by him while he was in the employ of C. C. Cannon, a drilling contractor, in the capacity of boiler fireman, and while engaged in the course of his employment as such employee.

Roy Weaver, brother of E. E. Weaver, testified that his brother, E. E. Weaver, an hour after the accident, and while in the doctor's office, and while suffering intense pain from being scalded all over, told him how the accident occurred, and Roy Weaver was permitted to testify as to what his brother told him at that time. The trial court found that the father and two minor brothers were dependent on the deceased for support, and awarded the compensation one-half to the father and one-half to the two minor brothers jointly.

The issues now before this court are: First, as to whether the allegations of the parties claiming compensation, as to how the deceased was injured, are good against a special exception that the pleadings do not set out the facts in the manner and way in which the said Weaver was alleged to have been injured, and as a result of which injuries he died with that legal certainty that would show that he received such injuries in the course of his employment, or as to enable plaintiff to prepare its defense and to meet defendant's proof. Second, as to whether the statement made by deceased to his brother under the conditions above named was res gestæ. Third, as to whether the court should have awarded the entire compensation to the father of the deceased or apportioned it in the manner that it did.

[1-3] In article 5246—82, 1918 Supplement

to Vernon's Texas Civil Statutes, after making certain provisions in which compensation for injuries will not be allowed, it is provided that the term "injuries" shall include all other injuries of every kind and character having to do with and originating in the work, business, trade, or profession of the employer received by an employee while engaged in or about the furtherance of the affairs or business of his employer, whether upon the employer's premises or elsewhere. We think that the pleadings above set out are not mere conclusions of the pleader as to how the injury was received, as claimed by plaintiff in error, Southern Surety Company, but that the pleadings are statements of facts, and are a sufficient statement of the cause of action under the provision of the statute mentioned for a basis for the admission of proof as to how the injuries were received. There is not the slightest intimation in the evidence that Weaver was not acting within the scope of his employment when the accident occurred. Those claiming compensation do not have to allege and prove that the deceased was injured through the negligence of his employer, and therefore the negligence cases cited by plaintiff in error do not apply to the facts of this case. The issue as to whether the statement, made by deceased to his brother, comes within the rule of res gestæ presents a difficult question, and one about which there is a difference of opinion in the authorities. In Pilkinton v. Gulf, C. & S. F. Ry. Co., 70 Tex. 226, 7 S. W. 805, our Supreme Court discusses this question as follows:

"As to what is res gestæ depends much upon the circumstances of each particular case. The doctrine is based on the presumption that declarations made at the time of the act, or transaction, or the event to which they relate, evoked by it, without premeditation, are part of the act, or transaction, or event. To be a part of the res gestæ, the declarations are not required to be precisely concurrent in point of time with the principal transaction, if they spring out of it, tend to explain it, are voluntary and spontaneous, and are made at a time so near as to preclude the idea of deliberate design. * * * "The rule is very latitudinous, and its application must be left largely to the judicial discretion of the trial court. Where the circumstances of the case render it probable that a statement offered as res gestæ is the result of premeditation or deliberate design to effect a certain purpose, it should not be received."

In the City of Galveston v. Barbour, 62 Tex. 172, 50 Am. Rep. 519, the facts do not show just how long after the injury, a boy told his mother how the injury occurred, except that the conversation was on the same evening of the injury, and the court held that it was permissible for the mother to testify as to the statement made to her by her son, and in their opinion quoted with approval from the Supreme Court of Missouri in the case of Harriman et al. v. Stowe, 57 Mo. 97:

"'The accident and the declarations formed connecting circumstances, and in the ordinary affairs of life no one would doubt the truth of those declarations, or hesitate to credit them as evidence.' The weight to be given to the mother's testimony, and her credibility, were questions for the jury.

"We think the evidence of the mother was admissible."

In International & G. N. R. Co. v. Smith (Tex. Sup.) 14 S. W. 642, a statement made by the injured party, after he had been removed from the scene of the injury, was held to be within the rule, and the court discussed the question in these words:

"The precise time when the statement was made does not appear from the evidence, and we think appellant has failed to show that the statement was not made at a time so near to the time of receiving the injuries as to preclude the idea of deliberate design. All reasonable presumptions must be indulged in support of the rulings of the trial court, and it devolves upon the party complaining to show us that the court has erred to his prejudice, which we think appellant has failed to do in the matter complained of by the first assignment of error."

In Dallas Hotel Co. v. Fox (Tex. Civ. App.) 196 S. W. 647, where a party had moved himself from the place of the accident without help, made a statement about an hour after the accident as to how it occurred, the court held that the statement made by the deceased was admissible, and discussed the issue as follows:

"The only question upon which we entertain any doubt is the length of time intervening between the accident and the making of the statement to Mansfield, but the record shows that Fox was painfully and fatally injured, and was doubtless suffering intensely; in fact he was injured to such an extent that he died within about 60 hours, and this would tend to rebut the idea that his statement was made with premeditation and design. The fact of his death soon afterwards is an element which the court may consider in determining the admissibility of his statement."

[4] The holdings in these cases are sustained in a general way by the following authorities. McGowen v. McGowen, 52 Tex. 665; T. & P. Ry. Co. v. Robertson, 82 Tex. 660, 17 S. W. 1041, 27 Am. St. Rep. 929; T. & P. Ry. Co. v. Hall, 83 Tex. 682, 19 S. W. 121. While the question is one of law, yet, the trial court in his discretion, having held that the statement of deceased, under consideration, was res gestæ, we would not, under the authorities mentioned, be warranted in holding the action of the trial court to be erroneous.

[5] The issue of the correctness of the action of the trial court, in awarding the compensation as it did, involves the question as to whether the compensation shall be distributed among the beneficiaries according to the law of descent and distribution as provided in article 5246—15, 1918 Supplement,

Vernon's Texas Civil Statutes. The case of Texas Employer's Insurance Association v. Boudreaux et al. (Tex. Com. App.) 231 S. W. 756, discloses that soon after the amendment of 1917 of article 5246—15 went into effect, the Industrial Accident Board adopted the rule that the compensation should be distributed among those mentioned in article 5246—15 as beneficiaries according to the law of descent and distribution.

Prior to the amendment of 1917, the statute with reference to the distribution of compensation was as follows:

"Provided that the compensation herein provided for shall be distributed according to the law providing for the distribution of other property of the deceased."

In Vaughan et al. v. Southwestern Surety Ins. Co., 109 Tex. 298, 206 S. W. 920, Chief Justice Phillips, speaking for the Supreme Court, construed this statute to mean that the compensation should pass to the beneficiaries according to the law of descent and distribution, and in his opinion used this language:

"The solution of the question is found in the proviso. It says that the compensation shall be distributed 'according to the law providing for the distribution of other property of the deceased.' Interpretation can add nothing to the clearness of this language. It means the law governing the distribution of the decedent's property, not a law authorizing the recovery of damages by certain kindred as their property. The only law we have regulating the distribution of the property of an intestate decedent is that comprised by our statutes of descent and distribution. That is plainly the law referred to. It is, in effect, made a part of the act.

"In the face of the plain provision of the act we are not at liberty to speculate upon the intention of the Legislature in its enactment. Nor is it necessary that we attempt to reconcile any inconsistencies that its operation may entail. The wisdom of the act is not a judicial question. The argument that it may allow certain kindred of the deceased employee to share in the compensation who were denied any right of action under another statute, cannot prevail over its express terms. It may in this respect operate unfairly, but that was for the determination of the Legislature. As is said by a competent authority, the remedy for a harsh law is not judicial interpretation, but its amendment or repeal."

In Texas Employer's Ins. Association v. Boudreaux et al., 231 S. W. 756, Judge Taylor, of the Commission of Appeals, clearly held that under the 1917 statute the compensation should be distributed according to the law of descent and distribution, and we copy this statement from his opinion:

"It is not necessary to decide what the proper rule of distribution would be in a case in which a stepmother is claimant as a beneficiary.

Suffice it to say in this case that the amendment, merely adding, as it does, a class of beneficiaries not known to the inheritance statutes, did not have the effect of changing the original plan of the act with respect to the distribution of compensation. Whether the beneficiaries designated stand in different degrees of relationship to the deceased employé, or whether some be of whole and some of the half blood, or whether the beneficiaries are identical with the heirs of the deceased employé, the statutes of descent and distribution must be looked to for a rule by which to apportion the compensation. The courts are not concerned with the wisdom of the plan. No other is provided by the act, and no modification of the full operation of the statutes as rules of apportionment is warranted by the provisions of the act, other than the modification incident to the designation of classes of beneficiaries not identical with the classes of heirs designated in the statutes."

In Gates v. Texas Employer's Ins. Association (Tex. Civ. App.) 242 S. W. 249 (writ of error denied), the deceased Gates left surviving him a wife and a dependent father, and the issue before the court was as to whether the father was entitled to any of the compensation. The court held that the compensation should be distributed according to the law of descent and distribution, and that the father was not entitled to any of the compensation, and quoted with approval the Vaughan Case and the Boudreaux Case. It seems to us that the statute under consideration is plain and subject to but one construction, and that if the stepmother had not been mentioned as a beneficiary there would never have been any question raised that the compensation should not be distributed according to the law of descent and distribution as provided. The question as to whether the dependent stepmother would be entitled to the compensation, if no others mentioned as beneficiaries were living at the time of the death of deceased, is not before us, but the mere fact that the stepmother was mentioned as one of the beneficiaries, and that the statute to that extent may be inconsistent, this apparent inconsistency should not be held to abrogate the plain provision of the statute that the compensation shall be distributed among the beneficiaries according to the law of descent and distribution. It seems to us that our views are clearly upheld by the decisions above mentioned.

We recommend that the judgments of the district court and the Court of Civil Appeals be affirmed.

CURETON, C. J. The judgment recommended in the report of the Commission of Appeals is adopted, and will be entered as the judgment of the Supreme Court.